# EXHIBIT A

ELECTRONICALLY FILED
3/12/2026 9:11 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 26-2-02612-31

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SNOHOMISH

| | |
|---|---|
| MELISSA ERWIN, on her own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAMS-SONOMA, INC.,<br><br>Defendant. | Case No.: 26-2-02612-31 _____<br><br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Melissa Erwin, on her own behalf and on behalf of others similarly situated, on information and belief except to her own experiences and matters of public record, complains of Defendant Williams-Sonoma, Inc. ("Defendant" or "Williams-Sonoma") as follows:

## I.    INTRODUCTION

1.    In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2.    Among other things, CEMA prohibits transmitting a commercial email with "false or misleading information in the subject line" to the email address of a Washington resident. RCW

CLASS ACTION COMPLAINT  – 1

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

19.190.020(1)(b).

3.     Defendant Williams-Sonoma engages in the precise activity which CEMA prohibits.

4.      Williams-Sonoma markets and sells home furnishing products under the "Pottery Barn," and "Pottery Barn Teen" brands. Upon information and belief, Williams-Sonoma exercises control over the activities of those brands it owns, including Pottery Barn and Pottery Barn Teen.

5.     Williams-Sonoma spams Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

6.     This false urgency wastes consumers' time by enticing them to engage with Defendant's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

7.     And through this deceptive time-sensitivity, Williams-Sonoma falsely narrows the field—steering consumers away from shopping for better deals—to its own products and services which must be purchased *now*.

8.     Plaintiff challenges Williams-Sonoma's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II.     JURISDICTION AND VENUE

9.     The Court has jurisdiction of this case under RCW 2.08.010.

10.     Venue is proper in Snohomish County under RCW 4.12.020(3) because Plaintiff's cause of action, or some part thereof, arose in Snohomish County.

CLASS ACTION COMPLAINT  – 2

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

### III.    PARTIES

11.    Plaintiff Melissa Erwin is a resident of Snohomish County, Washington.

12.    Defendant Williams-Sonoma, Inc. is incorporated in the state of Delaware, with its principal address at 3250 Van Ness Avenue, San Francisco, California 94109.

13.    Defendant Williams-Sonoma, Inc., through its subsidiary Williams-Sonoma Stores, Inc., maintains a registered agent in the state of Washington: The Prentice-Hall Corporation System, Inc., 300 Deschutes Way, Suite 208 MC-CSC1, Tumwater, Washington, 98501.

### IV.    FACTUAL ALLEGATIONS

**A.    CEMA protects Washington consumers from deceptive spam emails.**

14.    The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

15.    In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

16.    While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

17.    The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

18.    In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

19.    In 2012, one study estimated that Americans bear "costs of almost $20 billion

CLASS ACTION COMPLAINT  – 3

annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

20.    Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

21.    Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

22.    This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

23.    Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

24.    The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, Ch. 149, § 1.

25.    CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

CLASS ACTION COMPLAINT  – 4

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

26.    CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

27.    CEMA's "truthfulness requirements" thereby advance the statute's aim of protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

28.    CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

29.    CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

30.    The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B.    The subject lines of Williams-Sonoma's marketing emails make false time scarcity claims.**

31.    One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

32.    The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the

CLASS ACTION COMPLAINT – 5

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 31, at 22.

33.    "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture, supra* para. 31, at 27.

34.    Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

35.    False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 31, at 26.

36.    Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

37.    Under time pressure, "consumers might take up an offer to minimize the uncertainty of passing it up." *Id.*

38.    False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

39.    Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

CLASS ACTION COMPLAINT  – 6

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

40. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

41. These false time scarcity claims are a staple of Defendant William-Sonoma's email scheme to compel consumers to purchase its products.

42. Williams-Sonoma is a multi-channel retailer specializing in houseware, kitchenware, and other luxury home furnishing products. The company sells merchandise through several brand-specific e-commerce websites, including but not limited to: https://www.williams-sonoma.com/, https://www.potterybarn.com/, and https://www.pbteen.com/.

43. To advertise its products and encourage purchases, Williams-Sonoma spams consumers with emails promoting deals on their products.

44. **Urgent Spam Emails.** Unfortunately for those email recipients, Williams-Sonoma regularly titles its emails with urgent subject headings that do not reflect the true availability of the advertised deal. This strategy is demonstrated in the examples discussed below.

45. For years, Defendant Williams-Sonoma has implemented a coordinated scheme of false deadline marketing across multiple brands, including Pottery Barn and Pottery Barn Teen, that it initially promotes through spam emails announcing the offer, promotion, or sale.

46. Once it has hooked consumers on the advertised promotion, Defendant uses the subject lines of follow-up emails to present the deal as a scarce or time-limited opportunity. This strategy commands consumers' attention and pressures them to make purchases before Defendant's false "deadline." Then, once the originally advertised "deadline" has passed, Defendant knowingly extends the promotion to a new end date.

47. While Defendant presents these extensions as though they benefit consumers, the

CLASS ACTION COMPLAINT – 7

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

tactic operates to the opposite effect. By advertising firm deadlines and revealing extensions only after those deadlines have passed, Defendant creates artificial urgency and conceals the true duration of the promotion, pressuring consumers to purchase quickly and depriving them of the information necessary to make informed purchasing decisions.

48.    This misleading marketing strategy allows Williams-Sonoma to maximize sales during both the initial promotion, as well as the subsequent extension and/or revival.

49.    Operating under its Pottery Barn brand, Defendant Williams-Sonoma's most recent Cyber Monday sale provides an apt example of this scheme.

50.    On Monday, December 1, 2025, Defendant sent a commercial email to consumers with the subject heading: "LAST CALL to shop CYBER MONDAY ☎".

51.    But Cyber Monday was not the last opportunity for consumers to obtain the benefit of this promotion.

52.    On Tuesday, December 2, 2025, Defendant sent another commercial email with the subject heading: "🔔 CYBER MONDAY EXTENDED 🔔".

53.    Also on December 2, 2025, Defendant spammed consumers again with an email saying, in the subject line, "Our biggest deals END TONIGHT ⏰". But it was not the final day for this promotion.

54.    On December 3, 2025, Defendant sent an additional commercial email with the subject heading: "Cyber Week Deals 🎁 The savings continue!".

55.    The commercial emails sent by Defendant on December 1 and 2, 2025 contained false and misleading information in their subject lines. The falsity of the information contained in those emails is demonstrated by the later subject headings in the emails on December 3, 2025.

56.    Extending these sales was not a blessing in disguise to consumers: it was part and

CLASS ACTION COMPLAINT – 8

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

parcel of a coordinated marketing strategy designed to gin up consumer urgency with information that was not factually accurate about the duration of the promotion.

57.    The repeated use of bells, fire, clocks, and other time-related cues and emojis in these subject lines is designed to heighten the appearance of urgency, increasing pressure on consumers to act quickly, even though there was no genuine need to do so, as the promotion continued beyond the advertised deadlines.

58.    Defendant deployed this same deceptive marketing strategy in June 2025 by falsely representing that certain promotions were about to expire, when in fact consumers had additional time to take advantage of these promotions. Defendant calculated and planned these emails in advance to draw consumers in with the first round of emails with inaccurate subject headings and then send further emails pretending to extend the sale.

59.    For example, Defendant sent a series of commercial emails emphasizing the purported end of its "Extra 20% off Clearance" with "up to 60% off" promotion in the subject lines of the emails:

a.    **06/08/2025:** "48 hours left to save 📣 EXTRA 20% OFF CLEARANCE."

b.    **06/08/2025:** "EXTRA 20% OFF CLEARANCE ❗ ENDS TOMORROW + Don't miss these MAJOR deals."

c.    **06/08/2025**: "ENDS TOMORROW ⏰ Extra 20% off clearance! + Free shipping for a beautiful bath"

d.    **06/09/2025:** "Last day! EXTRA 20% OFF CLEARANCE."

e.    **06/09/2025:** "HOURS LEFT ⏳ EXTRA 20% OFF clearance + Your pillow refresh ships free."

60.    The promotion articulated by the subject headings of these commercial emails did

CLASS ACTION COMPLAINT – 9

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

not end on June 9th.

61.     The information contained in the subject headings of these emails was misleading and deceptive.

62.     Merely four days later, on June 13, 2025, Defendant proved the falsity of its prior statements with another email stating in the subject line: "Another chance to save ❗ Extra 20% off clearance," promoting the same deal, thus confirming that the same promotion remained available well past June 9th.

63.     The very same month, Defendant used the same deceptive technique to advertise another promotion in the subject lines of the emails:

     a.     **06/15/2025:** "48 HOURS LEFT ⏰ EXTRA 20% off clearance."

     b.     **06/15/2025:** "Extra 20% off clearance ENDS TOMORROW! + Luxurious leather seating."

     c.     **06/16/2025:** "LAST DAY ✨ 2 WAYS TO SAVE."

     d.     **06/16/2025:** "Extra 20% off clearance ENDS TONIGHT ⏳ + Inside: Select furniture now on sale!"

64.     But even this alleged June 16th deadline was far from the end of this deal.

65.     Just four days later, on June 20, 2025, Defendant sent another commercial email with the subject heading: "STARTS NOW 🎉 Extra 20% OFF select sale & clearance."

66.     So, consumers in receipt of the urgent calls to action in the June 15 and June 16, 2025, emails did not need to purchase on those days in order to access that promotion because it continued through at least June 20, 2025. Defendant designed this promotion with knowledge of the falsity of the original messages.

67.     Defendant again deployed this false time scarcity email strategy in early 2025.

CLASS ACTION COMPLAINT – 10

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

68.     On Thursday, January 2, 2025, Defendant sent consumers a commercial email with the subject line: "FINAL WEEKEND FOR UP TO 60% OFF + Fresh ideas ✨ NEW arrivals."

69.     Also on January 2, 2025, Defendant sent additional commercial emails with the subject headings: "FINAL WEEKEND FOR UP TO 60% OFF + NEW: The Spring Lookbook," "FINAL WEEKEND FOR UP TO 60% OFF + Ships free! Your new fave throw," and "FINAL WEEKEND FOR UP TO 60% OFF + Top-grain leather seating."

70.     On Saturday, January 4, 2025, Defendant spammed consumers with an email with the subject line: "Final weekend! End of Season Sale," promoting its same "End of Season Sale: Up to 60% off."

71.     These January 2nd and 4th subject lines were false or misleading. By telling consumers that the promotion was in its "final weekend," Defendant conveyed that the "End of Season Sale: Up to 60% off" would end that weekend—no later than Sunday, January 6, 2025. But in reality, Defendant continued advertising and offering the same promotion well beyond January 6th. This was a scheme by Defendant planned in advance to gin up consumer interest.

72.     On January 7, 2025, Defendant again urged consumers to act with the subject line: "ENDS TOMORROW 🚨 Up to 60% off," promoting the same "End of Season Sale: Up to 60% off."

73.     The following day, on January 8, 2025, Defendant sent another marketing email declaring: "HOURS LEFT 🕐 End of Season savings." This was the same promotion as before.

74.     Despite stating clearly in its subject headings that the promotion was in its "final weekend," asserting that the "End of Season Sale: Up to 60% off" would end no later than Sunday, January 6, 2025, Defendant continued advertising and offering the same promotion beyond that weekend and into the days that followed, including January 7 and January 8, 2025.

CLASS ACTION COMPLAINT  – 11

75.     These deceptive marketing strategies are not limited to Defendant's Pottery Barn brand. Defendant deployed the same false deadline marketing tactics under its Pottery Barn Teen brand, by falsely representing that certain promotions were about to expire, when in fact the same discounts continued beyond the advertised end date. This is part of the same scheme to gin up consumer interest with information that is false in the subject headings of commercial emails.

76.     For example, Defendant first announced its Pottery Barn Teen Cyber Monday promotion on Monday, December 1, 2025, emphasizing urgency in the subject lines of two separate commercial emails: "TODAY ONLY! 💥 CYBER MONDAY IS LIVE" and "HOURS LEFT! ⚡ Cyber Monday ends at midnight."

77.     But December 1, 2025, was not the final day on which consumers could access the advertised deal.

78.     On Tuesday, December 2, 2025, Defendant sent another commercial email with the subject line: "Okay, seriously, it's your LAST CHANCE to save!"

79.     This pattern reflects a familiar bait-and-switch scheme, in which Defendant names a promotion for a date-specific event, promotes the deal in emails leading up to that event, misrepresents that the deal is "ending" on the advertised day, and then extends the promotion after the event has passed.

80.     On Friday, Novsember 28, 2025, Defendant sent multiple emails promoting the same Black Friday deal with the subject lines: "HOURS LEFT 🎁 Our top gifts are UP TO 70% OFF ✨" and "✨ 🖤 TODAY ONLY! UP TO 70% OFF BLACK FRIDAY 🖤 ✨."

81.     These November 28th emails were false and misleading, because there were no true "hours left" and the sale was not limited to "today only," creating artificial urgency that pressured consumers to act immediately.

CLASS ACTION COMPLAINT  – 12

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

82.     In fact, on Saturday, November 29, 2025, Defendant sent another email advertising the same Black Friday 70% off sale with the subject line: "Black Friday is ⭐ E-X-T-E-N-D-E-D ⭐."

83.     In other words, just one day after representing the sale as limited to November 28th, Defendant extended the promotion, confirming that the prior "today only" and "hours left" representations were false.

84.     This manipulation of perceived scarcity demonstrates a deliberate pattern of misleading consumers by falsely representing deadlines for sales events and promotions.

85.     By repeatedly flooding consumers' inboxes with emails containing false end dates and urgent subject headings, Defendant ensures that recipients cannot make informed purchasing decisions and instead feel compelled to act on artificially created urgency.

86.     These and other examples of the commercial emails that Williams-Sonoma has sent consumers containing subject lines with false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C.      Williams-Sonoma knows when it sends emails to Washington residents.**

87.     A sophisticated commercial enterprise like Williams-Sonoma, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

88.     First, the sheer volume of email marketing that Williams-Sonoma engages in puts it on notice that Washington residents would receive its emails. Since 2022, Williams-Sonoma, operating under its **Pottery Barn** brand, has been blasting out emails at a rate averaging 4,640 per year, 387 per month, and roughly 12-13 per day.

CLASS ACTION COMPLAINT  – 13

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ● FAX 872.863.1109
straussborrelli.com

89.     Since 2022, Williams-Sonoma, operating under its **Pottery Barn Teen** brand has been blasting out emails at a rate averaging 4,516 per year, 376 per month and approximately 12 per day.

90.     Second, Williams-Sonoma may obtain location information tied to email addresses when consumers make purchases from its digital platforms, including https://www.williams-sonoma.com/, https://www.potterybarn.com/, and https://www.pbteen.com/, or otherwise self-report such information to Williams-Sonoma.

91.     Third, Williams-Sonoma may obtain location information tied to email addresses by tracking the IP addresses of devices used to open its emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

92.     Specifically, Williams-Sonoma likely uses Salesforce Marketing Cloud to manage its email marketing campaigns. Salesforce Marketing Cloud tracks recipients' interactions with marketing emails, including whether an email is opened and whether links within the email are clicked. The emails also appear to include tracking pixels associated with Merkle and Amobee (now Nexxen), which can record email opens and support marketing attribution and retargeting. In addition, Williams-Sonoma's Pottery Barn brand uses Advertising.com, which is commonly used for retargeting purposes. These technologies track recipient engagement with marketing emails and related advertising activity.

93.     Williams-Sonoma is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

94.     Fourth, Williams-Sonoma may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other

CLASS ACTION COMPLAINT  – 14

identifiers.

95. Fifth, Williams-Sonoma may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

96. Sixth, Williams-Sonoma may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

97. It is thus highly probable that a seller with the size and sophistication of Williams-Sonoma employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D.     Williams-Sonoma violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

98. Williams-Sonoma has spammed Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of her right to be free from such annoyance and harassment under CEMA.

99. For example, Plaintiff received emails containing false or misleading subject lines sent by Defendant in 2025, as described above in Section B. These messages were sent to Plaintiff's personal Gmail address:

a.     Plaintiff received the email described above at ¶ 80 sent on November 28, 2025, with the subject line: "✨ 🖤 TODAY ONLY! UP TO 70% OFF BLACK FRIDAY 🖤 ✨" from Defendant Williams-Sonoma under its Pottery Barn Teen brand.

b.     Plaintiff received the email described above at ¶ 76 sent on December 1, 2025, with the subject line: "TODAY ONLY! 💥 CYBER MONDAY IS LIVE," from Defendant

CLASS ACTION COMPLAINT  – 15

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 ● FAX 872.863.1109
straussborrelli.com

Williams-Sonoma under its Pottery Barn Teen brand.

c.      Plaintiff received the email, described above at ¶ 50, sent on December 1, 2025, with the subject line: "LAST CALL to shop CYBER MONDAY ☎" from Defendant Williams-Sonoma under its Pottery Barn brand.

d.      Plaintiff received the email described above at ¶ 76, sent on December 1, 2025, with the subject line: "HOURS LEFT! ⚡ Cyber Monday ends at midnight," from Defendant Williams-Sonoma under its Pottery Barn Teen brand.

e.      Plaintiff received the email described above at ¶ 53, sent on December 2, 2025, with the subject line: "Our biggest deals END TONIGHT 🕐" from Defendant Williams-Sonoma under its Pottery Barn brand.

100.    These subject lines of these emails were false or misleading in violation of CEMA for misrepresenting the timing of the deals and as further described herein.

101.    These emails' subject lines contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V.      CLASS ALLEGATIONS

102.    Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

103.    Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

CLASS ACTION COMPLAINT  – 16

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

104.    The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

105.    Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

106.    The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

107.    There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

108.    Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class Members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

109.    Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

110.    Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff

CLASS ACTION COMPLAINT  – 17

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class Members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

111.    The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class Member and that Class Member's resulting damages.

112.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class presents no special difficulties.

## VI.    CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

113.    Plaintiff incorporates and realleges paragraphs 1–112 above.

114.    CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

115.    Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

116.    Defendant initiated the transmission, conspired with another to initiate the

CLASS ACTION COMPLAINT  – 18

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

117.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(b)(2).

118.    Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

119.    For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

## Second Claim to Relief

### Violation of the Consumer Protection Act, RCW 19.86.020

120.     Plaintiff incorporates and realleges paragraphs 1–112 above.

121.    The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

122.    A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

123.    A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

124.    CEMA provides that "[n]o person may initiate the transmission, conspire with

CLASS ACTION COMPLAINT  – 19

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

125. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

126. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

127. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents.

128. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

129. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII.    JURY DEMAND

130. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b)(1).

## VIII.    PRAYER FOR RELIEF

Plaintiff asks that the Court:

CLASS ACTION COMPLAINT – 20

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

A.      Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B.      Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C.      Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D.      Award Plaintiff's costs of suit, including reasonable attorneys' fees; and

E.      Order such further relief the Court finds appropriate.


*[Counsel signatures to follow on next page.]*

CLASS ACTION COMPLAINT  – 21

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

RESPECTFULLY SUBMITTED AND DATED this 12th day of March, 2026.

By*:*    */s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave., Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile:  (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV*
Michael C. Tackeff*
Andrew K. Murray*
**STRANCH, JENNINGS &**
**GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com


*Counsel for Plaintiff*

**\*Applications for admission**
***pro hac vice* forthcoming**

CLASS ACTION COMPLAINT  – 22

# — EXHIBIT  A —

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SNOHOMISH

MELISSA ERWIN, on her own behalf and on behalf of others similarly situated,

        Plaintiff,

   vs.

WILLIAMS-SONOMA, INC.,

        Defendant.

Case No.: _____

CLASS ACTION COMPLAINT

EXHIBIT A

| Date | Subject Line |
| --- | --- |
| January 2, 2025 | "FINAL WEEKEND FOR UP TO 60% OFF + Fresh ideas ✨ NEW arrivals" |
| January 2, 2025 | "FINAL WEEKEND FOR UP TO 60% OFF + NEW: The Spring Lookbook." |
| January 2, 2025 | "FINAL WEEKEND FOR UP TO 60% OFF + Ships free! Your new fave throw." |
| January 2, 2025 | "FINAL WEEKEND FOR UP TO 60% OFF + Top-grain leather seating." |
| January 4, 2025 | "Final weekend! End of Season Sale" |
| June 8, 2025 | "48 hours left to save 📣 EXTRA 20% OFF CLEARANCE." |
| June 8, 2025 | "EXTRA 20% OFF CLEARANCE ❗ ENDS TOMORROW + Don't miss these MAJOR deals." |
| June 8, 2025 | "ENDS TOMORROW ⏰ Extra 20% off clearance! + Free shipping for a beautiful bath" |
| June 9, 2025 | "Last day! EXTRA 20% OFF CLEARANCE." |

CLASS ACTION COMPLAINT
EXHIBIT A – 1

STRAUSS BORRELLI PLLC
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com

| Date | Subject Line |
|---|---|
| June 9, 2025 | "HOURS LEFT ⏳ EXTRA 20% OFF clearance + Your pillow refresh ships free." |
| June 15, 2025 | "48 HOURS LEFT ⏰ EXTRA 20% off clearance." |
| June 15, 2025 | "Extra 20% off clearance ENDS TOMORROW! + Luxurious leather seating." |
| June 16, 2025 | "LAST DAY ✨ 2 WAYS TO SAVE." |
| June 16, 2025 | "Extra 20% off clearance ENDS TONIGHT ⏳ + Inside: Select furniture now on sale!" |
| November 28, 2025 | "HOURS LEFT 🎁 Our top gifts are UP TO 70% OFF ✨" |
| November 28, 2025 | "✨ 🖤 TODAY ONLY! UP TO 70% OFF BLACK FRIDAY 🖤 ✨" |
| December 1, 2025 | "LAST CALL to shop CYBER MONDAY ☎️" |
| December 2, 2025 | "TODAY ONLY! 💥 CYBER MONDAY IS LIVE" |
| December 2, 2025 | "HOURS LEFT! ⚡ Cyber Monday ends at midnight" |
| December 2, 2025 | "Our biggest deals END TONIGHT 🕐" |

CLASS ACTION COMPLAINT
EXHIBIT A – 2

**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, Illinois 60611-4501
TEL. 872.263.1100 • FAX 872.863.1109
straussborrelli.com